IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**BRADLEY C. BIRKENFELD**,

      Plaintiff,

v.                                **Case No:** _____

**LEONARD A. LAUDER;** and,
**KEVIN M. COSTNER**,

      Defendants.

_____ /

## COMPLAINT

Comes now Plaintiff, Bradley C. Birkenfeld ("BIRKENFELD"), through his undersigned attorneys, and hereby files this Complaint against Defendants Leonard A. Lauder and Kevin M. Costner for fraud, negligent misrepresentation and intentional interference with advantageous or business relationship, all arising from publication of Plaintiff's book, *Lucifer's Banker: The Untold Story of How I Destroyed Swiss Bank Secrecy* ("*Lucifer's Banker*"), published by Greenleaf Book Group Press ("Greenleaf"). Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1332(a)(2) based on diversity of the parties. Plaintiff is a resident of Malta, Defendant Leonard A. Lauder ("LAUDER") is a resident of New York; Defendant Kevin M. Costner ("COSTNER") is a resident of Colorado, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.      This Court has personal jurisdiction over the Defendants under Florida's Long-Arm Statute, Fla. Stat. §48.193 (1) (a) and (2) because:

      a.   Defendants have committed various torts in the State of Florida while Plaintiff was a resident there;

      b.   Defendants are engaged in substantial and ongoing business activities in  the State of Florida through, *inter alia*,  the advertisement, distribution, and sale of cosmetics, fragrances, entertainment, and otherwise; and,

      c.   Defendants LAUDER and COSTNER each have minimum contacts with the forum *sub judice* such that the maintenance of this action does not offend traditional notions of fair play and substantial justice and Defendants' individual due process rights would not be harmed or offended by litigation in this forum.

3.      Venue is proper in this District under 28 U.S.C. § 1391 (b) (2) and (3) because a substantial portion of the acts or omissions that gave rise to Plaintiff's claims occurred in this District while Plaintiff BIRKENFELD was a resident of Florida and because this Court has personal jurisdiction over Defendants.

## PARTIES

4.      Plaintiff BIRKENFELD is a native-born United States citizen currently residing in Malta. BIRKENFELD is a world-renowned whistleblower.  Among other things, Plaintiff voluntarily disclosed to multiple United States law enforcement authorities and the U.S. Senate Permanent Subcommittee on Investigations ("PSI")

the existence of 19,000 Americans with secret, offshore, undeclared, numbered bank accounts at UBS, Switzerland, an offshore mecca for billionaires, to evade United States income taxes, capital gains taxes, estate taxes, or otherwise engage in illegal conduct. As a direct and proximate cause of Plaintiff's voluntary disclosures, the United States has recovered more than $20 billion from American taxpayers in back taxes, fines, and penalties. Approximately 100,000 Americans came into tax compliance in three separate IRS amnesty programs. Plaintiff single-handedly precipitated the end of Swiss bank secrecy through a new United States-Swiss tax treaty and otherwise. Plaintiff's courageous disclosures earned him the largest IRS whistleblower award in history: $104 million. Plaintiff is the author of *Lucifer's Banker* published by Greenleaf. (See *www.lucifersbanker.com*).

5. Defendant LAUDER is chairman emeritus of Estée Lauder, the world's third largest maker of cosmetics and fragrances. Defendant LAUDER stepped down as CEO of Estée Lauder in 1999. According to public reports, Defendant LAUDER's net worth exceeds $15.9 billion. Defendant LAUDER's private banker at UBS was Christian Bovay in Geneva, Switzerland. Defendant LAUDER is a marquee name.

6. Defendant COSTNER is an American actor, director, producer, and musician. Among other accolades, Defendant COSTNER has won two (2) Academy Awards and three (3) Golden Globe Awards. He starred as Eliot Ness in the major motion picture blockbuster "*The Untouchables*." Defendant COSTNER's private banker at UBS was Stephane Furrer in Geneva, Switzerland. Defendant COSTNER is a marquee name.

**FACTS**

7.     In 2005, Plaintiff BIRKENFELD, then a UBS Director, voiced objection to UBS' executive management about secret, offshore, undeclared, numbered bank accounts held by the American 1% to evade income taxes, capital gains, and estate taxes.  The response by UBS management was anger and retaliation by UBS against Plaintiff and a classic cover-up. As a result of this dispute, Plaintiff BIRKENFELD resigned from UBS.

8.     In 2007, Plaintiff BIRKENFELD voluntarily contacted United States law enforcement officials at the Department of Justice (June 19-20, 2007) the Internal Revenue Service (October 12, 2007), and, the Securities and Exchange Commission (November 14, 2007).  Plaintiff also testified before the United States Senate Permanent Subcommittee on Investigations about staggering tax fraud perpetrated by the American 1% using secret, offshore, undeclared, numbered bank accounts in Switzerland (October 11, 2007; November 13, 2007).

9.     Among other persons, Plaintiff spoke with Kevin Downing and Karen Kelly at the U.S. Department of Justice, Daniel Reeves and John McDougal at the Internal Revenue Service, Matthew Kutz at the Department of Treasury, Thomas Silverstein and Laura Josephs at the Securities and Exchange Commission, and Robert Roach and Laura Stuber at the PSI.

10.    Plaintiff's voluntary disclosures revolutionized the multi-trillion-dollar Swiss banking industry.  Switzerland and the United States signed and implemented a new tax treaty.  The United States Senate held three hearings and issued three reports. The Internal Revenue Service implemented three amnesty programs.  The United

States Government Accountability Office published four reports. In 2009, UBS and the United States concluded a deferred prosecution agreement on charges of conspiring to defraud the United States. Among other things, UBS was required to provide names and account information for American clients engaged in tax fraud, cease secret, offshore, undeclared, numbered bank accounts for Americans, and pay $780 million in fines, penalties, interest, and restitution.

11.    UBS provided names and account information for only 4,700 of the 19,000 wealthiest Americans complicit in tax fraud through secret undeclared numbered accounts. Many important and well-known UBS clients were knowingly omitted by UBS from the list provided to the IRS, including both Defendants herein. Evidence supports the inference that the leniency of the United States towards UBS was exchanged for political or financial favors, including an email published by Wikileaks in which former Secretary of State Hillary R. Clinton states that a "political" solution must be engineered for UBS' decades-long massive tax fraud.

12.    Former United States Senator Carl Levin, former Chairman of the PSI, wrote regarding Plaintiff's revelations concerning American secret, offshore, undeclared, numbered bank accounts in Switzerland in a letter dated July 28, 2009:

> *In October of 2007, Mr. Birkenfeld … provided testimonial and documentary information related to his employment as a private banker at UBS in Switzerland. In a sworn deposition before the Subcommittee staff, Mr. Birkenfeld supplied information on the program conducted by UBS Switzerland to attract client accounts in the United States, and the activities and practices employed by UBS private bankers operating out of Switzerland…. The information provided by Mr. Birkenfeld has been accurate and enabled the Subcommittee to initiate its investigation of the practices of UBS.*

13.    Director of the Division of Enforcement at the Securities and Exchange Commission, Robert Khuzami, wrote a letter to United States District Judge for the Southern District of Florida William J. Zloch dated August 11, 2009, stating:

> *The information provided by Mr. Birkenfeld led the Commission to commence a formal investigation into the conduct he described ... [and] was also important in helping the staff question witnesses and formulate requests for documents from UBS and others. The information that the staff has learned in the course of the Commission's investigation has been consistent with the information that Mr. Birkenfeld has provided.*

14.    Jeffrey H. Sloman, Acting United States Attorney, stated that Plaintiff had provided "*substantial assistance in the investigation of others who have committed offenses*" that "*has been significant, useful, truthful, complete, and reliable.*"

15.    The IRS Summary Award Report for Plaintiff's $104 million whistleblower award stated:

> *Birkenfeld provided information on taxpayer behavior that the IRS had been unable to detect, provided exceptional cooperation, identified connections between parties to transactions (and the methods used by UBS AG) and the information led to substantial changes in UBS AG business practices and commitment to future compliance.... The comprehensive information provided by the whistleblower was exceptional in both its breadth and depth.... [T]he information provided by the whistleblower formed the basis for unprecedented actions against UBS AG, with collateral impact on other enforcement activities and a continuing impact on future compliance by UBS AG.*

16.    In an exchange with Judge  Zloch on August 21, 2009, Mr. Downing represented that,

> *I have no reason to believe that we would have had any other means to have disclosed what was going on [regarding American secret, offshore, undeclared, numbered, bank accounts in Switzerland] but for an insider in that scheme providing detailed information, which Mr. Birkenfeld did.*

17.     Plaintiff formalized a contract with Greenleaf to publish *Lucifer's Banker* on or about June 22, 2016, when Plaintiff was a resident of Florida.  Plaintiff's submitted manuscript was vetted for accuracy or otherwise by a literary lawyer retained by Plaintiff and by Greenleaf's legal counsel.

18.     The submitted manuscript identified Defendant LAUDER and his mother, Josephine Esther "Estée" Lauder, the founder and  namesake of the Estée" Lauder cosmetics and beauty products empire, as owners of secret, offshore, undeclared bank accounts at UBS, Switzerland.   Defendant LAUDER's UBS private banker was Christian Bovay in Geneva, Switzerland. Plaintiff BIRKENFELD was Estée Lauder's private banker until her death on April 24, 2004. Among other things, the original submitted manuscript stated (p. 232), "At least two of [Hillary Clinton's billionaire friends], Jack Manning and Leonard Lauder, had undeclared secret numbered accounts at UBS in Geneva and had been contributing money to her political campaigns for years." Plaintiff was also the UBS private banker for Mr. Manning. Plaintiff had previously reported to the U.S. Department of Justice, the IRS, the SEC, and to the PSI under oath that Defendant LAUDER and his mother Estée Lauder, had secret, offshore, undeclared numbered accounts at UBS Switzerland.

19.     Defendant COSTNER's UBS private banker was Stephane Furrer in Geneva, Switzerland.   Among other things, Plaintiff's submitted manuscript stated (pages 135-136):  "I gave [my attorneys] client names and account holdings that made their eyes pop:  Igor Olenicoff, Kevin Costner, Leonard and Estée Lauder, Abdul Aziz

Abbas (a shady character with direct ties to Saddam Hussein), porn stars, prominent physicians, and one of Osama bin Laden's biological brothers."

20.    Plaintiff had previously reported that Defendant COSTNER held a secret, offshore, undeclared numbered bank account at UBS, Switzerland, to the U.S. Department of Justice, IRS, SEC, and the PSI in testimony under oath.

21.    In an October 11, 2007, email from Mr. Dickieson to colleagues David Schertler and Peter Taylor, Mr. Dickieson reports that in Plaintiff's deposition before the PSI, Plaintiff BIRKENFELD "mentioned that Kevin Costner had a $20 million account in the Private Banking Unit [of UBS]."

22.    In a March 4, 2008 email from Mr. Dickieson to Bob Roach, staff director of the PSI, the former states that "Olenikov [sic] was identified to you during the session we had on October 11, 2007. [Check your notes it was in the part of the discussion where Brad mentioned Costner, too]."

23.    Mr. Roach replied by email the same day, "You are right.  I completely forgot about Olenicoff .  I remembered Costner, but not Olenicoff."

24.    In an April 22, 2008, email from Plaintiff's attorney David H. Dickieson to Kevin Downing in the Tax Division of the Department of Justice, Mr. Dickieson states, among other things, "Brad is willing to provide information about actor Kevin Costner's relationship with "UBS."

25.    On or about September 2016, on the eve of scheduled publication after tens of thousands of copies of *Lucifer's Banker* had been printed, Defendants LAUDER and COSTNER, separately through their attorneys, threatened legal action against

Plaintiff BIRKENFELD and Greenleaf unless references to them as owners of secret, offshore, undeclared, numbered accounts at UBS, Switzerland in *Lucifer's Banker* were censored.

26.    In a letter to Plaintiff dated September 27, 2016, Defendant COSTNER falsely asserted that he had "never had an account with UBS…[M]y client never had any account with UBS and has never had any offshore bank account."

27.    In a companion letter dated September 27, 2016, Defendant COSTNER again falsely and fraudulently asserted that Defendant COSTNER "has never had an account with UBS, nor had any other offshore bank account of any kind."

28.    As a direct and proximate consequence of the malicious, negligent or intentional, and false statements of Defendant COSTNER to Plaintiff and Greenleaf denying ownership of secret, offshore, undeclared, numbered secret bank account at UBS, Switzerland and COSTNER's threats of legal action, the reference to him to that effect was censored from *Lucifer's Banker*.   The censorship substantially diminished the newsworthiness and global sales of *Lucifer's Banker*, delayed its publication, caused Greenleaf to destroy tens of thousands of previously printed books, required Plaintiff to shoulder the expense of hiring an additional literary attorney to vet the altered manuscript, an increase in Plaintiff's literary insurance coverage to $3 million.   The financial injury to Plaintiff BIRKENFELD exceeds $75,000.00.

29.    In a letter dated September 21, 2016, Defendant LAUDER did not directly refute or dispute that he maintained accounts at UBS or other Swiss banks.  Among

other things, the letter equivocally stated: "[A]ny bank accounts in Switzerland that were maintained by Mr. Lauder at any given time were principally in connection with investments managed by UBS on his behalf and were properly reported to the U.S. and Swiss authorities.  We were further reliably advised that all required U.S. and foreign income tax filings and foreign bank account reports with respect to such accounts were made in a timely manner in accordance with IRS and Department of Treasury requirements by a major U.S. accounting firm."

30.     In a letter dated September 26, 2016, from Defendant LAUDER's attorney to Greenleaf, Defendant LAUDER again did not dispute ownership of accounts at UBS. Defendant LAUDER's attorney stated, however, that his accounts at UBS complied with United States and Swiss law.  The September 26, 2016 letter threatened legal action against Plaintiff and Greenleaf unless all references to the Lauders in *Lucifer's Banker* were eliminated.  The letter falsely insinuated that Defendant LAUDER and his mother Estée Lauder never owned a secret, offshore, undeclared numbered account at UBS, Switzerland.

31.     Defendants LAUDERS' and COSTNER'S false insinuations, averments or denials and legal threats to Plaintiff and Plaintiff's publisher coerced the deletion of references to them in the original manuscript of *Lucifer's Banker* as owners of secret, offshore, undeclared, numbered bank accounts in Switzerland with UBS, an offshore bank mecca for billionaires with locations in Zurich, Geneva, and Lugano, Switzerland.

32.     As a direct and proximate consequence of the malicious, negligent or intentional, and false  statement of Defendant LAUDER to Plaintiff and Greenleaf denying ownership of a secret, offshore, undeclared, numbered bank account at UBS, Switzerland and Defendant LAUDER's threat of legal action, references to Defendant LAUDER to that effect were censored from *Lucifer's Banker*.

33.     The censorship caused by Defendants' tortious falsehoods substantially diminished the newsworthiness and global sales of *Lucifer's Banker,* delayed its publication, caused Greenleaf to destroy tens of thousands of previously printed books, required Plaintiff to shoulder the expense of hiring an additional literary attorney to vet the altered manuscript, caused damage to Plaintiff's reputation and brand, and, to increase Plaintiff's literary insurance coverage to $3 million.

34.     The financial injury to Plaintiff exceeds this Court's jurisdictional minimum amount of $75,000.00, exclusive of interest and costs.

35.     All conditions precedent to the filing of this action have been performed, have occurred or have been waived by Defendants.

36.     Plaintiff BIRKENFELD has been required to obtain the services of the undersigned attorneys to prosecute this matter on his behalf and has agreed to pay them a reasonable fee for their services.

## COUNT  I - TORTIOUS INTERFERENCE WITH ADVANTAGEOUS  OR BUSINESS RELATIONSHIP (COSTNER)

37.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 - 36, above, as though fully set forth herein.

38.     Plaintiff has an advantageous or business relationship with Greenleaf to publish, disseminate and promote his book *Lucifer's Banker*.

39.     Plaintiff has legal rights pursuant to his business relationship with Greenleaf for the publication, promotion and dissemination of his book *Lucifer's Banker*.

40.     Defendant COSTNER knew of the advantageous and business relationship between Plaintiff BIRKENFELD and his book publisher.

41.     Defendant COSTNER intentionally and without justification interfered with Plaintiff BIRKENFELD's advantageous or business relationship with Greenleaf for the publication, promotion and dissemination of his book *Lucifer's Banker*.

42.     Defendant COSTNER acted to disrupt or interfere with Plaintiff BIRKENFELD's business interests or relationship with Greenleaf by threatening legal action unless a reference to him as an owner of a secret, offshore, undeclared, numbered account at UBS, Switzerland was censored from *Lucifer's Banker*.

43.     Despite the falsity of Defendant COSTNER's threats, Greenleaf capitulated to Defendant COSTNER's interference and the  *Lucifer's Banker* manuscript was accordingly altered under duress by Plaintiff and Greenleaf to omit reference to Defendant COSTNER as being a participant in the secret UBS Swiss banking scheme to defraud the United States of billions of dollars in tax revenues.

44.     Defendant COSTNER had no justification for his false and malicious threats and acts of interference against Plaintiff BIRKENFELD because in fact Defendant COSTNER owned a secret, offshore, undeclared, numbered account at UBS, Switzerland.

45.    As a direct and proximate result of the malicious, intentional, and false statements and threats of Defendant COSTNER to Plaintiff and Greenleaf denying ownership of a secret, offshore, undeclared, numbered bank account at UBS, Switzerland and COSTNER's threats of legal action, which tortuously interfered with or disrupted the business or advantageous relationship between Plaintiff BIRKENFELD and Greenleaf, the reference to Defendant COSTNER was deleted from *Lucifer's Banker*.

46.    The deleted material relating to Defendant COSTNER substantially subtracted from Plaintiff's portrait of American marquee tax cheats limned in the book, lowered public interest in the book, reduced its newsworthiness and diminished global sales of *Lucifer's Banker,* caused delay of its publication, caused Greenleaf to destroy tens of thousands of previously printed books, required Plaintiff to shoulder the expense of hiring additional editors and legal counsel to again edit and review the altered manuscript, and occasioned an increase in Plaintiff's literary insurance coverage to $3 million, all of which resulted in substantial  monetary damage to Plaintiff and to his  reputation and brand.

47.    The damages to Plaintiff as a result of Defendant COSTNER's tortious interference exceeds this Court's jurisdictional minimum of $75,000.00.

    **WHEREFORE**, Plaintiff BRADLEY C. BIRKENFELD requests this Court to render judgment on Count I against Defendant KEVIN M. COSTNER for tortious interference with advantageous or business relationship and award to Plaintiff all

damages to be proved at the trial of this cause, including interest, costs and such other and further relief as this Court deems just and proper.

## COUNT II - TORTIOUS INTERFERENCE WITH ADVANTAGEOUS OR BUSINESS RELATIONSHIP (LAUDER)

48.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 - 36, above, as though fully set forth herein.

49.    Plaintiff BIRKENFELD has an advantageous or business relationship with Greenleaf to publish, disseminate and promote his book *Lucifer's Banker*.

50.    Plaintiff has legal rights pursuant to his business relationship with Greenleaf for the publication, promotion and dissemination of his book *Lucifer's Banker*.

51.    Defendant LAUDER knew of the advantageous or business relationship between Plaintiff BIRKENFELD and his book publisher.

52.    Defendant LAUDER intentionally and without justification interfered with Plaintiff BIRKENFELD's relationship with Greenleaf for the publication, promotion and dissemination of his book *Lucifer's Banker*.

53.    Defendant LAUDER acted to disrupt or interfere with Plaintiff BIRKENFELD's business interests or relationship with Greenleaf by threatening legal action unless a reference to him as an owner of a secret, offshore, undeclared, numbered account at UBS, Switzerland was censored from *Lucifer's Banker*.

54.    Despite the falsity behind Defendant LAUDER's threats, Greenleaf capitulated to Defendant LAUDER's tortious interference for fear of protracted and costly litigation and the  *Lucifer's Banker* manuscript was accordingly altered under duress by Plaintiff and Greenleaf to omit reference to Defendant LAUDER as being

a participant in the secret UBS Swiss banking scheme to defraud the United States of billions of dollars in tax revenues.

55.     Defendant LAUDER had no justification for his false and malicious threats and acts of interference against Plaintiff BIRKENFELD because in fact Defendant LAUDER owned a secret, offshore, undeclared, numbered account at UBS, Switzerland.

56.     As a direct and proximate result of the malicious, intentional, and false statements and threats of Defendant LAUDER to Plaintiff and Greenleaf denying ownership of a secret, offshore, undeclared, numbered bank account at UBS, Switzerland and LAUDER's threats of legal action, which tortuously interfered with or disrupted the business or advantageous relationship between Plaintiff BIRKENFELD and Greenleaf, the reference to Defendant LAUDER was deleted from *Lucifer's Banker*.

57.     The deleted material relating to Defendant LAUDER substantially subtracted from Plaintiff's portrait of American marquee tax cheats limned in the book, lowered public interest in the book, reduced its newsworthiness and diminished global sales of *Lucifer's Banker*, caused delay of its publication, caused Greenleaf to destroy tens of thousands of previously printed books, required Plaintiff to shoulder the expense of hiring additional editors and legal counsel to again edit and review the altered manuscript, and occasioned an increase in Plaintiff's literary insurance coverage to $3 million, all of which resulted in substantial  monetary damage to Plaintiff and to his  reputation and brand.

58. The damages to Plaintiff caused by Defendant LAUDER exceeds this Court's jurisdictional minimum of $75,000.00.

**WHEREFORE**, Plaintiff BRADLEY C. BIRKENFELD requests this Court to render judgment on Count II against Defendant LEONARD A. LAUDER for tortious interference with advantageous or business relationship and award to Plaintiff all damages to be proved at the trial of this cause, including interest, costs and such other and further relief as this Court deems just and proper.

### COUNT III - NEGLIGENT MISREPRESENTATION (COSTNER)

59. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 47, above, as though fully set forth herein.

60. Specifically, Defendant COSTNER made misrepresentations of material fact, *to wit*:

    a. On September 27, 2016, Defendant COSTNER falsely asserted to Greenleaf, intended for Plaintiff BIRKENFELD, that he had "never had an account with UBS…".

    b. On September 27, 2016, Defendant COSTNER also misrepresented to Greenleaf, intended for Plaintiff BIRKENFELD, that he "never had any account with UBS and has never had any offshore bank account."

    c. In a companion letter dated September 27, 2016, Defendant COSTNER again falsely represented to Plaintiff BIRKENFELD that

he (Defendant COSTNER) "has never had an account with UBS, nor had any other offshore bank account of any kind."

d. As a direct and proximate consequence of these misrepresentations by Defendant COSTNER to Plaintiff and Greenleaf denying ownership of secret, offshore, undeclared, numbered secret bank account at UBS, Switzerland and Costner's threats of legal action, the reference to him to that effect was censored from *Lucifer's Banker*.

61.     These statements by Defendant COSTNER are misrepresentations of the truth that are in fact false.

62.     Defendant COSTNER was negligent in making these representations to Greenleaf and Plaintiff, because he knew or should have known them to be false or misrepresentation of material fact.

63.     Defendant COSTNER was also grossly negligent in making these representations to Greenleaf and Plaintiff  because he knew them to be false or a misrepresentations of material fact, either of which was false.

64.     Defendant COSTNER intended to induce Plaintiff BIRKENFELD and/or Greenleaf to rely  on his negligent misrepresentations.

65.     Injury resulted to Plaintiff BIRKENFELD acting in justifiable reliance upon the negligent misrepresentations of Defendant COSTNER.

66.     Defendant COSTNER had substantial and protectible pecuniary interests in making the misrepresentations of material fact.

67.     These pecuniary interests include protection from disclosure of his secret assets from his ex-wife in their hotly contested and fractious divorce proceedings.

68.     The pecuniary interests also include concealment from disclosure of the Swiss secret numbered bank account assets to the Internal Revenue Service with the attendant potential criminal and civil penalties and inter alia, negative publicity arising therefrom.

69.     Defendant COSTNER's protectible interests additionally include substantial pecuniary and financial interest from the avoidance of paying millions of dollars in taxes, penalties and interest to the United States government on the undisclosed millions of dollars that Defendant COSTNER had hidden in his Swiss numbered bank account at UBS in Geneva, Switzerland.

70.     As a direct and proximate result of the negligent misrepresentations and false threats of Defendant COSTNER to Plaintiff and Greenleaf denying ownership of a secret, offshore, undeclared, numbered bank account at UBS, Switzerland and COSTNER's threats of legal action, the reference to Defendant COSTNER was deleted from *Lucifer's Banker*.

71.     The deleted material related to Defendant COSTNER substantially subtracted from Plaintiff's portrait of American marquee tax cheats limned in the book, lowered public interest in the book, reduced its newsworthiness and lessened global sales of *Lucifer's Banker,* caused delay of its publication, caused Greenleaf to destroy tens of thousands of previously printed books, required Plaintiff to shoulder the expense of hiring additional editors and legal counsel to again edit and review the altered

manuscript, and occasioned an increase in Plaintiff's literary insurance coverage to $3 million, all of which resulted in substantial  monetary damage to Plaintiff and to his  reputation and brand.

72.    As a direct and proximate result of Plaintiff BIRKENFELD's reliance on Defendant COSTNER's negligent misrepresentations and actions, as set forth herein or otherwise proved at the trial for this cause, Plaintiff BIRKENFELD suffered direct and proximate substantial damages in an amount not less than this Court's jurisdictional minimum of $75,000.00, and such other and further damages and amounts as will be proved at trial.

73.    Plaintiff BIRKENFELD reserves the right to amend this Count III  to seek punitive damages upon a showing of gross negligence, pursuant to Fla. Stat. §768.72 (2019), and in accordance with applicable Florida law.

**WHEREFORE**, Plaintiff BRADLEY C. BIRKENFELD requests this Court to render judgment on Count III against Defendant KEVIN M. COSTNER for negligent misrepresentation and award to Plaintiff all damages to be proved at the trial of this cause, including interest, costs and such other and further relief as this Court deems just and proper.

### COUNT IV - NEGLIGENT MISREPRESENTATION (LAUDER)

74.    Plaintiff realleges and incorporates by reference the allegations contained in

in Paragraphs1 through 36, and 48 through 58, above, as though fully set forth herein.

75.     Defendant LAUDER made misrepresentations of material fact, *to wit*:

a. In a letter dated September 21, 2016, to Greenleaf and intended for Plaintiff BIRKENFELD, Defendant LAUDER, although not directly disputing that he maintained accounts at UBS or other Swiss banks, misrepresented that "any bank accounts in Switzerland that were maintained by [him] at any given time were principally in connection with investments managed by UBS on his behalf and were properly reported to the U.S. and Swiss authorities."

b. On September 21, 2016, Defendant LAUDER, in the same communication, also falsely asserted that he was "further reliably advised that all required U.S. and foreign income tax filings and foreign bank account reports with respect to such accounts were made in a timely manner in accordance with IRS and Department of Treasury requirements by a major U.S. accounting firm."

c. On September 26, 2016, in a communication from Defendant LAUDER to Greenleaf intended for Plaintiff BIRKENFELD again did not dispute ownership of accounts at UBS again falsely stated that his accounts at UBS complied with United States and Swiss law.

d. The September 26, 2016, communication also misrepresented that Defendant LAUDER and his mother Estée Lauder never owned a

secret, offshore, undeclared numbered account at UBS, Switzerland and threatened legal action against Plaintiff and Greenleaf unless all references to the Lauder family were eliminated in *Lucifer's Banker*.

e. As a direct and proximate consequence of these misrepresentations by Defendant LAUDER to Plaintiff and Greenleaf denying ownership of secret, offshore, undeclared, numbered secret bank account at UBS, Switzerland and LAUDER's threats of legal action, the reference to him to that effect was censored from *Lucifer's Banker*.

76.     These statements by Defendant LAUDER are misrepresentations of the truth that are in fact false.

77.     Defendant LAUDER was negligent in making these representations to Greenleaf and Plaintiff, because he knew or should have known them to be false or a misrepresentation of material fact; or he believed them to be true, but they were in fact false and he should have known them to be false.

78.     Defendant LAUDER was also grossly negligent in making these representations to Greenleaf and Plaintiff statements because he knew them to be false or a misrepresentation of material fact, either of which was false.

79.     Defendant LAUDER intended to induce Plaintiff BIRKENFELD and/or Greenleaf to rely  on his misrepresentations.

80.    Injury resulted to Plaintiff BIRKENFELD acting in justifiable reliance upon the negligent misrepresentations of Defendant LAUDER.

81.    Defendant LAUDER had substantial and protectible pecuniary interests in making his negligent misrepresentations of material fact.

82.    These pecuniary interests included preventing disclosure of the Swiss secret numbered bank account assets to the Internal Revenue Service with the attendant potential criminal and civil penalties and inter alia, negative publicity arising therefrom.

83.    Defendant LAUDER's protectible interests further included the substantial pecuniary and financial interest from the avoidance of paying millions of dollars of taxes, penalties and interest on the undisclosed millions of dollars that Defendant LAUDER had hidden in his Swiss numbered bank account at UBS in Geneva, Switzerland.

84.    As a direct and proximate result of the negligent misrepresentations and false threats of Defendant LAUDER to Plaintiff and Greenleaf denying ownership of a secret, offshore, undeclared, numbered bank account at UBS, Switzerland and LAUDER's threats of legal action, the reference to Defendant LAUDER was deleted from *Lucifer's Banker*.

85.    The deletion substantially subtracted from Plaintiff's portrait of American marquee tax cheats limned in the book, diminished the public interest in the book, its newsworthiness and global sales of *Lucifer's Banker,* delayed its publication, caused Greenleaf to destroy tens of thousands of previously printed books, required

Plaintiff to shoulder the expense of hiring additional editors and legal counsel to again edit and review the altered manuscript, and occasioned an increase in Plaintiff's literary insurance coverage to $3 million, all of which resulted in substantial monetary damage to Plaintiff and to his reputation and brand.

86.    As a direct and proximate result of Plaintiff BIRKENFELD's reliance on Defendant LAUDER's negligent misrepresentations and actions, as set forth herein or otherwise proved at the trial for this cause, Plaintiff BIRKENFELD suffered direct and proximate substantial damages in an amount not less than this Court's jurisdictional minimum of $75,000.00, and such other and further damages and amounts as will be proved at trial.

87.    Plaintiff BIRKENFELD reserves the right to amend this Count IV to seek punitive damages upon a showing of gross negligence, pursuant to Fla. Stat. §768.72 (2019), and in accordance with applicable Florida law.

    **WHEREFORE**, Plaintiff BRADLEY C. BIRKENFELD requests this Court to render judgment on Count IV against Defendant LEONARD A. LAUDER for negligent misrepresentation and award to Plaintiff all damages to be proved at the trial of this cause, including interest, costs and such other and further relief as this Court deems just and proper.

## COUNT V - FRAUD (COSTNER)

88.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 47 and 59 through 73, above, as though fully set forth herein.

89.     Specifically, Defendant COSTNER made deliberate and knowing false statements of material fact, *to wit*:

a. On September 27, 2016, Defendant COSTNER knowingly and deliberately asserted the falsehood to Greenleaf intended for Plaintiff BIRKENFELD that he had "never had an account with UBS…".

b. On September 27, 2016, Defendant COSTNER also knowingly and deliberately expressed falsities and untruth to Greenleaf, which was also intended for Plaintiff BIRKENFELD, that he "never had any account with UBS and has never had any offshore bank account."

c. In a companion letter dated September 27, 2016, Defendant COSTNER again knowingly and deliberately made deceptive representations to Plaintiff BIRKENFELD that he (Defendant COSTNER) "has never had an account with UBS, nor had any other offshore bank account of any kind."

d. As a direct and proximate consequence of Plaintiff's detrimental reliance upon these knowing and deliberate misrepresentations by Defendant COSTNER to Plaintiff and Greenleaf denying ownership of secret, offshore, undeclared, numbered secret bank account at UBS, Switzerland and COSTNER's threats of legal action, the reference to him to that effect was censored from *Lucifer's Banker*.

90.     These statements by Defendant COSTNER are deliberate and knowingly deceptive and false.

91.     Defendant COSTNER was deliberately fraudulent in making these false statements to Greenleaf and Plaintiff, because he knew them to be to be untrue.

92.     Defendant COSTNER's fraudulent deceptive statements were designed to induce Plaintiff BIRKENFELD and/or Greenleaf to rely to their detriment on his fraudulent false statements.

93.     Plaintiff BIRKENFELD detrimentally relied upon the deliberately false and fraudulent representations of Defendant COSTNER.

94.     Injury resulted to Plaintiff BIRKENFELD acting in detrimental and justifiable reliance upon the deliberate deception and fraudulent representations of Defendant COSTNER.

95.     Defendant COSTNER had substantial and protectible pecuniary interests in making the deliberate false representations of material fact.

96.     These pecuniary interests include protection from disclosure of his secret assets from his ex-wife in their hotly contested and fractious divorce proceedings.

97.     The pecuniary interests also include concealment from disclosure of the Swiss secret numbered bank account assets to the Internal Revenue Service with the attendant potential criminal and civil penalties and inter alia, negative publicity arising therefrom.

98.     Defendant COSTNER's protectible interests additionally include substantial pecuniary and financial interest from the avoidance of paying millions of dollars in

taxes, penalties and interest to the United States government on the undisclosed millions of dollars that Defendant COSTNER had hidden in his Swiss numbered bank account at UBS in Geneva, Switzerland.

99.     As a direct and proximate result of the fraudulent falsities and false threats of Defendant COSTNER to Plaintiff and Greenleaf denying ownership of a secret, offshore, undeclared, numbered bank account at UBS, Switzerland and COSTNER's threats of legal action, the reference to Defendant COSTNER was deleted from *Lucifer's Banker*.

100.    The deletion substantially subtracted from Plaintiff's portrait of American marquee tax cheats limned in the book, diminished the public interest in the book, its newsworthiness and global sales of *Lucifer's Banker,* delayed its publication, caused Greenleaf to destroy tens of thousands of previously printed books, required Plaintiff to shoulder the expense of hiring additional editors and legal counsel to again edit and review the altered manuscript, and occasioned an increase in Plaintiff's literary insurance coverage to $3 million, all of which resulted in substantial  monetary damage to Plaintiff and to his  reputation and brand.

101.    As a direct and proximate result of Plaintiff BIRKENFELD's reliance on Defendant COSTNER's false and fraudulent representations and actions, as set forth herein or otherwise proved at the trial for this cause, Plaintiff BIRKENFELD suffered direct and proximate substantial damages in an amount not less than this Court's jurisdictional minimum of $75,000.00, and such other and further damages and amounts as will be proved at trial.

102.   Plaintiff Birkenfeld reserves the right to amend this Count V to seek punitive damages for fraud against Defendant COSTNER in accordance with Fla. Stat. §768.72 (2019), and applicable Florida law.

WHEREFORE, Plaintiff BRADLEY C. BIRKENFELD requests this Court to render judgment on Count V against Defendant KEVIN M. COSTNER for fraud and award to Plaintiff all damages to be proved at the trial of this cause, including interest, costs and such other and further relief as this Court deems just and proper.

## COUNT VI - FRAUD (LAUDER)

103.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 36, 48 through 58, and 74 through 87,  above, as though fully set forth herein.

104.   Specifically, Defendant LAUDER made deliberate and knowing false statements of material fact, *to wit*:

   a.   In a letter dated September 21, 2016, to Greenleaf and intended for Plaintiff BIRKENFELD, Defendant LAUDER, although not directly disputing that he maintained accounts at UBS or other Swiss banks, deliberately and knowingly falsely stated  that "any bank accounts in Switzerland that were maintained by [him] at any given time were principally in connection with investments managed by UBS on his behalf and were properly reported to the U.S. and Swiss authorities."

   b.   On September 21, 2016, Defendant LAUDER, in the same communication, also deliberately falsely asserted that he was

"further reliably advised that all required U.S. and foreign income tax filings and foreign bank account reports with respect to such accounts were made in a timely manner in accordance with IRS and Department of Treasury requirements by a major U.S. accounting firm."

c. On September 26, 2016, in a communication from Defendant LAUDER to Greenleaf intended for Plaintiff BIRKENFELD again did not dispute ownership of accounts at UBS, but again deliberately and deceptively stated that his accounts at UBS complied with United States and Swiss law.

d. The September 26, 2016, communication was also fraudulently untruthful in stating that Defendant LAUDER and his mother Estée Lauder never owned a secret, offshore, undeclared numbered account at UBS, Switzerland and threatened legal action against Plaintiff and Greenleaf unless all references to the Lauder family were eliminated in *Lucifer's Banker*.

e. As a direct and proximate consequence of Plaintiff's detrimental reliance upon these fraudulent, knowing and deliberate falsehoods by Defendant LAUDER to Plaintiff and Greenleaf denying ownership of secret, offshore, undeclared, numbered secret bank account at UBS, Switzerland and LAUDER's threats of legal action,

the reference to him to that effect was censored from *Lucifer's Banker*.

105.   These statements by Defendant LAUDER are deliberate and knowingly deceptive and false.

106.   Defendant LAUDER was deliberately fraudulent in making these false statements to Greenleaf and Plaintiff, because he knew them to be to be untrue.

107.   Defendant LAUDER's fraudulent deceptive statements were designed to induce Plaintiff BIRKENFELD and/or Greenleaf to rely to their detriment on his fraudulent false statements.

108.   Plaintiff BIRKENFELD detrimentally relied upon the deliberately false and fraudulent representations of Defendant LAUDER.

109.   Injury resulted to Plaintiff BIREKENFELD acting in detrimental and justifiable reliance upon the deliberate deception and fraudulent representations of Defendant LAUDER.

110.   Defendant LAUDER had substantial and protectible pecuniary interests in making his deliberately fraudulent representations of material fact.

111.   These pecuniary interests included preventing disclosure of the Swiss secret numbered bank account assets to the Internal Revenue Service with the attendant potential criminal and civil penalties and inter alia, negative publicity arising therefrom.

112.   Defendant LAUDER's protectible interests further included the substantial pecuniary and financial interest from the avoidance of paying millions of dollars of

taxes, penalties and interest on the undisclosed millions of dollars that Defendant LAUDER had hidden in his Swiss numbered bank account at UBS in Geneva, Switzerland.

113. As a direct and proximate result of the deliberately fraudulent falsities and false threats of Defendant LAUDER to Plaintiff and Greenleaf denying ownership of a secret, offshore, undeclared, numbered bank account at UBS, Switzerland and LAUDER's threats of legal action, the reference to Defendant LAUDER was deleted from *Lucifer's Banker*.

114. The deletion substantially subtracted from Plaintiff's portrait of American marquee tax cheats limned in the book, diminished the public interest in the book, its newsworthiness and global sales of *Lucifer's Banker*, delayed its publication, caused Greenleaf to destroy tens of thousands of previously printed books, required Plaintiff to shoulder the expense of hiring additional editors and legal counsel to again edit and review the altered manuscript, and occasioned an increase in Plaintiff's literary insurance coverage to $3 million, all of which resulted in substantial  monetary damage to Plaintiff and to his  reputation and brand.

115. As a direct and proximate result of Plaintiff BIRKENFELD's reliance on Defendant LAUDER's  false and fraudulent representations and actions, as set forth herein or otherwise proved at the trial for this cause, Plaintiff BIRKENFELD suffered direct and proximate substantial damages in an amount not less than this Court's jurisdictional minimum of $75,000.00, and such other and further damages and amounts as will be proved at trial.

116.    Plaintiff Birkenfeld reserves the right to amend this Count VI to seek punitive damages for fraud against Defendant LAUDER in accordance with Fla. Stat. §768.72 (2019), and applicable Florida law.

**WHEREFORE**, Plaintiff BRADLEY C. BIRKENFELD requests this Court to render judgment on Count VI against Defendant LEONARD A. LAUDER for fraud and award to Plaintiff all damages to be proved at the trial of this cause, including interest, costs and such other and further relief as this Court deems just and proper.

Respectfully submitted this 9th day of May 2019.

*s/W. Bruce DelValle*_____
W. Bruce DelValle
Fla. Bar No: 779962
Bruce Fein (*pro hac vice pending*)
FEIN & DELVALLE PLLC
300 New Jersey Avenue NW, Ste 900
Washington, DC  20001
Telephone: (202) 465-8729
*Email: brucedelvalle@gmail.com*
        *bruce@feinpoints.com*

**Attorneys for Plaintiff Bradley C. Birkenfeld.**