IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**BRADLEY C. BIRKENFELD,**

    Plaintiff,

v.                                  Case No: 19-cv-21871-RS

**LEONARD A. LAUDER;** and,
**KEVIN M. COSTNER,**

    Defendants.
_____/



### AFFIDAVIT OF BRADLEY C. BIRKENFELD

Today the 7th day of August of the year Two Thousand and Nine Nineteen (2019), The undersigned: Bradley C. Birkenfeld;

Residing at: 140 Spinola Road, St. Julian's STJ 3011, MALTA

Does hereby declare under oath that:

1. I am over the age of eighteen (18) years old and am aware of my obligations of providing an oath and make this affidavit upon my personal knowledge.

2. I began my career as a Swiss Private Banker in 1996, following graduation with my master's degree from the American Graduate School of Business in La Tour-de-Peilz, Switzerland.

3. In October 2001, I began working as a director with UBS, Switzerland's largest bank, in the private banking division, a middle management position. My supervisor was Christian Bovay.

Page 1 of 6

Exhibit "A"
Opp. Lauder Mot. Dismiss
Case No: 19-cv-21871-RS

Mr. Bovay and I were one of twenty-five international bankers in this division, based in Geneva, Switzerland. My employment with UBS terminated in 2006.

4. As an UBS private banker I offered wealth management services to clients. My principal job responsibility was to solicit wealthy Americans to move their assets to the bank, enabling them to hide their funds through the use of anonymous, "numbered" bank accounts that due to Switzerland's strict banking secrecy laws, permitted American clients to avoid paying U.S. income, capital gains and inheritance taxes.

5. I arranged and attended many UBS sponsored events like art shows, ATP tennis matches, wine tastings, golf outings, car shows and yacht races in the United States to attract wealthy Americans as potential clients and to retain existing American clients.

6. During the time of my prior employment with UBS (2001-2006), I frequently travelled to the United States to solicit clients. In 2004, I personally met with Leonard A. Lauder in Florida at an UBS private function at the Shore Club in South Beach, Miami, Florida. At the event, I gave him a box of Swiss chocolates and the best wishes of Mr. Bovay, his Private Banker and my supervisor based in Geneva, Switzerland.

7. Estée Lauder, Leonard A. Lauder's mother and the founder of the global cosmetics empire from which his wealth derives was my client at UBS, Geneva. I managed her secret, numbered offshore undeclared account until her death in 2004. I was provided her original death certificate via FedEx overnight delivery, arranged by her New York law firm per mandatory UBS procedures.

8. The UBS, Geneva computer system named "DOMINO", had access screens for clients such as Estée Lauder that contained information for family member links with similar secret numbered accounts and I saw Leonard A. Lauder's name as a referenced account holder each of the multitude of times I accessed my client's (Estée Lauder's) file.

9. Leonard A. Lauder had his numbered/secret/non-U.S. tax compliant accounts with UBS, Geneva that I serviced with Christian Bovay at least until the time I left the employment of UBS in 2006.

10. Leonard A. Lauder admits he had accounts with UBS, Geneva (not UBS, Zurich) during the time periods at issue in this case. These accounts could not have been declared (W9) "legal" accounts.

11. Any declared (W9) "legal" accounts owned and/or controlled by Leonard A. Lauder during the time period at issue were required to be in an entirely separate legal department called Swiss Financial Advisors (SFA) in an entirely separate city in Switzerland (UBS in Zurich) with an entirely different private banker.

12. The account(s) Leonard A. Lauder held with UBS, Geneva, as referenced on the Lauder family account screen(s) during the time periods at issue in this litigation were illegal, numbered Swiss bank accounts for the purposes of evading taxes.

13. Further, Christian Bovay and I often discussed Leonard A. Lauder's secret numbered account with UBS, Geneva and we worked together to service Leonard A. Lauder's secret UBS, Geneva account. Christian Bovay traveled several times a year from Geneva to New York City and met with Leonard Lauder at his opulent offices in Manhattan. He and I often discussed his travels to meet with Leonard A. Lauder.

14. After causing his attorney to initially - and falsely - deny in writing that he had any accounts at UBS, Geneva, Leonard A. Lauder then permitted his attorney to belatedly and begrudgingly truthfully admit that he did, in fact, have accounts at UBS, Geneva. See attached Exhibits "1" and "2".

15. I provided Leonard A. Lauder's name in sworn statements and/or testimony to the Department of Justice, the IRS, the SEC and in sworn testimony before the U.S. Senate as being one of many U.S. citizens having undeclared numbered/secret/non-U.S. tax compliant illegal bank accounts at UBS, Geneva. These actions caused the end of Swiss banking secrecy designed to evade United States income taxes, capital gains taxes, inheritance taxes, or otherwise engage in illegal conduct.

16. The former Acting United States Attorney, Jeffrey H. Sloman, stated on the record in federal court filings in the Southern District of Florida that I had provided "substantial assistance in the investigation of others who have committed offenses" and that the information I provided "has been significant, useful, truthful, complete, and reliable."

17. As a direct and proximate cause of my historic voluntary disclosures of individual tax cheats, such as Leonard A. Lauder, the United States has recovered more than $25 billion from American taxpayers and Swiss banks in back taxes, fines, and penalties. In excess of 100,000 Americans came into tax compliance in three (3) separate IRS amnesty programs. I single-handedly precipitated the end of Swiss bank secrecy through my historic and unprecedented whistleblowing.

18. Not only did I meet with Leonard A. Lauder in South Florida on UBS, Geneva banking business, I knew him to be a resident of Palm Beach County with a large multi-million dollar oceanfront mansion located on 126 South Ocean Boulevard, Palm Beach, Florida.

19. Leonard A. Lauder is a well-known Palm Beach socialite and fixture in the South Florida art and wealthy elite community.

20. I never met Leonard A. Lauder in New York or anywhere other than in South Florida.

21.     Leonard A. Lauder is the Principal of a registered Florida business entity, Melville Management, LLC that conducts business in the State of Florida relating to his holdings, tax planning and wealth management.

22.     Leonard A. Lauder was and is Chairman Emeritus of The Estée Lauder Companies Inc. and visits and conducts business in the Estée Lauder Companies Inc's South Florida offices located at 5301 Blue Lagoon Dr Ste 300, Miami, FL 33126.

23.     I was a resident of the State of Florida, living in South Florida at 5875 Collins Ave, Miami Beach, Florida 33140 when I wrote the final draft and edits of my book, *Lucifer's Banker: The Untold Story of How I Destroyed Swiss Bank Secrecy* (www.lucifersbanker.com).

24.     I was a resident of the State of Florida when I signed my book publishing deal with Greenleaf, living in South Florida at 5875 Collins Ave, Miami Beach, Florida 33140.

25.     I was a resident of the State of Florida, living in South Florida at 5875 Collins Ave, Miami Beach, Florida 33140 when Leonard A. Lauder tortiously interfered with my business relationships and negligently and/or fraudulently misrepresented falsehoods to harm me and to benefit his holdings, tax planning and wealth management.

26.     I was a resident of the State of Florida, living in South Florida at 5875 Collins Ave, Miami Beach, Florida 33140 when Leonard A. Lauder sent letters, or caused said letters to be sent that tortiously interfered with my business relationships - including speaking and writing engagements, and negligently and/or fraudulently misrepresented falsehoods to harm me and my financial interests, including but not limited to book sales, threaten my book deal to benefit his holdings, tax planning and wealth management.

27.     I was a resident of the State of Florida, living in South Florida at 5875 Collins Ave, Miami Beach, Florida 33140 when I launched publication of my book, *Lucifer's Banker: The Untold Story of How I Destroyed Swiss Bank Secrecy* (www.lucifersbanker.com).

**FURTHER AFFIANT SAYETH NAUGHT**

Signature _Bradley C. Birkenfeld_        U.S. Passport No: 488146266

*Signed and sworn before me today;*
*the* __7th__ *day of August,*
*of the year Two Thousand and Nineteen.*

_____
Commissioner for Oaths

Solemnly declared in my presence by Bradley Charles Birkenfeld holder of US passport number 488 146 6266



**MARCO BURLO'**
Notary Public & Commissioner for Oaths

152/1, Naxxar Road,
San Gwann, SGN 9030
Tel: (+356) 20928210

Page 6 of 6

Exhibit "A"'
Opp. Lauder Mot. Dismiss
Case No: 19-cv-21871-RS

# Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

R. Bruce Rich
212-310-8170
bruce.rich@weil.com

September 21, 2016

Eric Rayman, Esq.
Miller Korzenik Sommers LLP
488 Madison Avenue
New York, NY 10022-5702

Re: Leonard and Estèe Lauder

Dear Eric:

As requested on our phone conversation, I set forth in summary form herein the "bottom line" of an extensive investigation conducted more than six years ago and in which our firm was actively involved into Bradley Birkenfeld's allegations at that time that the late Estèe Lauder had maintained a secret numbered (presumably unreported) account at UBS in Switzerland and, similarly, that Leonard Lauder maintained that undisclosed account following Mrs. Lauder's death. That investigation revealed the completely false nature of such allegations.

At that time, our firm was reliably informed that, at the time of her death, Mrs. Lauder had no assets in any bank deposit accounts whatsoever in Switzerland. Further, any bank accounts in Switzerland that were maintained by Mr. Lauder at any given time were principally in connection with investments managed by UBS on his behalf and were properly reported to the U.S. and Swiss authorities. We were further reliably advised that all required U.S. and foreign income tax filings and foreign bank account reports with respect to such accounts were made in a timely manner in accordance with IRS and Department of Treasury requirements by a major U.S. accounting firm.

Further as we discussed, the CBS and ABC television networks both looked into the allegations of Mr. Birkenfeld and thereafter concluded not to broadcast any story on this.

I am disappointed that you, on Mr. Birkenfeld's behalf, and Greenleaf Book Group have thus far declined to share with us the apparent rehashing of these allegations in the about-to-be-published *Lucifer's Banker: The Untold Story of How I Destroyed Swiss Banking Secrecy*. Such refusal impedes our ability fully to respond as to the potentially defamatory import of statements made concerning the

Eric Rayman, Esq.
September 21, 2016
Page 2

**Weil, Gotshal & Manges LLP**

Lauders. That said, I would appreciate your contacting me once you have had a chance to discuss this matter with Mr. Birkenfeld. In the meanwhile, we hereby place both Mr. Birkenfeld and Greenleaf Book Group on notice that Mr. Lauder reserves all rights with respect to any statements, either relating to the allegations cited above, or potential others not yet known to us, that may appear in the book as published.

Sincerely,

*[signature]*

R. Bruce Rich

cc: Bryan Goodwin

**Weil, Gotshal & Manges LLP**

BY EMAIL AND COURIER

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

R. Bruce Rich
+1 (212) 310-8170
bruce.rich@weil.com

September 26, 2016

Mr. Bryan Goodwin
Chief Operating Officer and General Counsel
Greenleaf Book Group, LLC
4005B Bannister Lane
Austin, TX 78704
bgoodwin@greenleafbookgroup.com

Mr. Eric Rayman
Miller Korzenik Sommers LLP
488 Madison Avenue, Suite 1120
New York, NY 10022-5702
eric@mksrlaw.com

Dear Messrs. Goodwin and Rayman:

Bradley Birkenfeld's *Lucifer's Banker*, prepublication copies of which have already been released, read, and the subject of critical reviews, unlawfully defames our client, Leonard Lauder, as well as the entire Lauder family and the business carrying its name. We hereby demand that further distribution and sale of the book be halted immediately until these defamatory passages have been removed. Your clients' failure to do so will subject them to the full panoply of legal and equitable remedies resulting from knowingly false publication of reputationally injurious statements of fact.

The central thesis of *Lucifer's Banker* is set forth at page 4 of the book: that the motivation of "those devious bastards" at UBS Switzerland, where Mr. Birkenfeld was employed, was to "seduc[e] scores of One-Percenters into stashing their fortunes in secret Swiss numbered accounts, no questions asked…, know[ing] all along that everything we were doing was in flagrant defiance of American tax laws." The factual premise of a corrupt Swiss banking system aided and abetted by UBS and employees such as Mr. Birkenfeld is repeated throughout the book, e.g., at page 47 ("For nearly a century, secret bank accounts in Switzerland served as the treasure chests for the world's super-rich and all-powerful. They were the place to hide one's gold, jewels, bundles of cash, and bearer bonds—no names attached"); 48 (wealthy and powerful clients never needed to pay "a single euro in taxes"); 49 ("The rich and famous, the bad and ugly, intelligence agents and Mafiosi used their numbered accounts to hide money from wives, husbands, and business partners; to embezzle company profits; to fund small wars and finance drug

Mr. Bryan Goodwin  
Mr. Eric Rayman  
September 26, 2016  
Page 2

**Weil, Gotshal & Manges LLP**

cartels. Movie stars loved the intrigue of it all, and mistresses clutched Swiss Black American Express cards in their Louis Vuitton purses. Never mind that if you held a numbered account, you actually *paid* the Swiss a flat fee for the privilege and never received a penny of interest. The balance was yours to dream about, tucked safely away under your steel Swiss mattress"); 49 ("Best of all, money that no one knew about was *untaxable* money. For wealthy Americans who were less than forthright, it was a godsend. The American market was target-rich, and Swiss banks began assembling teams of private wealth managers who would travel to the United States, attending luxurious venues and soirées where potential clients were swimming in cash, and bring home the bacon."); 70 (in-house training at UBS to assure "our happy [U.S.] cowboy [client] is pleased that he is paying no taxes on his nest egg."); 80 ("apex" of Birkenfeld's career in Swiss banking was "making tons of money" off of "mostly harmless, wealthy Americans who just thought the government was overtaxing them and then spending their hard-earned money on dumbass programs about which they had no say."); 86 (In Birkenfeld's "long back-and-forths to the States," he'd "had lots of time to think about the people I was helping to *not* pay their share, while the tax man's axe fell on those who couldn't afford it….[H]ere I was, helping those One-Percenters shirk their tax obligations while regular folks hefted the burden.")

Sprinkled throughout this narrative are false and defamatory references to Estee and Leonard Lauder as prime examples of beneficiaries of this unlawful scheme. On page 68, the book alleges that Estee Lauder was one such "secret account holder."

On page 88, Birkenfeld recounts attending a Breast Cancer Research Foundation charity event, described as "a project of the Estee Lauder family." He proceeds to write: "The Lauders give tons of money to this charity, which has so far raised $90 million, but they're not here tonight because, unfortunately, Estée has just passed away. While the Lauder family philanthropies are well documented, their secret UBS accounts are for their eyes only. Why should rich folk pay all those bothersome taxes when they're oh-so-generous?" The passage continues by stating that Birkenfeld met on one occasion with Leonard Lauder, that Mr. Lauder stated that he was looking forward to a meeting in New York with Mr. Birkenfeld's boss, and gratuitously and sarcastically observes: "I'm sure [Mr. Lauder is] eager to ensure that Mom's hidden offshore assets are properly probated."

On page 136, during Birkenfeld's confessional phase, he recounts meeting with several attorneys and "regal[ing] them with very true tales about how UBS whipped us into bringing in Net New Money, as if we were oarsmen on a Roman galleon, and how the bank prepped us to lie, cheat, and—for want of a prettier term—steal. I gave them client names and account holdings that made their eyes pop: Igor Olenicoff, Kevin Costner, Leonard and Estée Lauder…."

Through such deplorable smear tactics, Mr. Birkenfeld and Greenleaf Book Group have already released into the international marketplace the completely fabricated and wholly unsupported allegation that members of the Lauder family maintained bank accounts with UBS Switzerland for the purpose of evading tax payments to the appropriate tax authorities. It may suffice for Mr. Birkenfeld's purposes to make the wholly speculative leap of logic from the fact that one or more members of the Lauder family

Exhibit "2'" - Plaintiff's Affidavit  
Opp. Lauder Mot. Dismiss  
Case No: 19-cv-21871-RS

Mr. Bryan Goodwin
Mr. Eric Rayman
September 26, 2016
Page 3

**Weil, Gotshal & Manges LLP**

(for entirely legitimate reasons) maintained Swiss bank accounts for a period of time to the conclusion that no taxes were paid with respect to such account holdings – but lawful publication under U.S. libel law requires far more. Likewise, it may suit Mr. Birkenfeld's – but hopefully not Greenleaf's -- commercial interests in exploitative "journalism" to indiscriminately lump the Lauder family with others who may or may not have acted scrupulously in respect of abiding by the law – but lawful publication under U.S. libel law requires far more.

I have previously advised you both, and therefore your respective clients have been put on notice, as to the false and defamatory nature of the allegations made in the book concerning the Lauder family's compliance with all tax reporting requirements implicated by any of the bank accounts they maintained at UBS. I further have previously advised you both as to Mr. Birkenfeld's prior, unsuccessful efforts at the end of 2009 to peddle these same falsehoods through other media outlets. Despite these representations, made based on thorough prior investigation into and refutation of Mr. Birkenfeld's assertions, we have been asked to provide further support for the falsity of what has been and is about to be more widely published. With due respect, this turns the legal burden on its head. An author may not recklessly make defamatory charges – say, Bruce Rich murdered his wife – without any supporting evidence, yet escape the consequences of defamation law unless and until I were to come forward with proof of the negative. It is the author's responsibility, and his publisher's once placed on notice, to have a good-faith basis, grounded in fact, for the defamatory assertion. Mr. Birkenfeld fails that test. That being the case, constitutional malice would be easily proven against both Mr. Birkenfeld and Greenleaf Book Group.

In all events, as part of our own review of these allegations, we have spoken with Mr. Lauder directly, with his personal attorney, Jeffrey Weinberg, who is a retired partner in my law firm, with Mr. Lauder's financial staff, and with representatives of the Big 4 accounting firm that has managed Mr. Lauder's and the Lauder family's U.S. tax filings for decades, including as relate to any Swiss UBS bank accounts ever maintained by any members of the Lauder family. That review has turned up not a scintilla of evidence to support Mr. Birkenfeld's allegation that Mr. Lauder, as well, perhaps, as other members of the Lauder family, maintained Swiss UBS accounts on which proper tax and other regulatory filings were not made. All evidence is to the contrary.

It is our client's earnest hope that Greenleaf will do the right thing for all concerned – to preserve the reputational integrity of one of the most prominent and respected families in the world, to avoid tarnishing the renowned Estee Lauder brand as marketed globally through the Estee Lauder Companies, Inc., and to preserve Greenleaf's public association as a reputable publisher. That right thing entails eliminating any references to the Lauders from all copies of the book worldwide prior to its broad public release; advising those third parties to whom the book has heretofore been distributed of that intention, so as to minimize further reputational damage as may arise from media coverage of passages that never should have seen the light of day; and advising us promptly of your intention to undertake these corrective measures.

WEIL:\95880059\1\99980.0025

Exhibit "2'" - Plaintiff's Affidavit
Opp. Lauder Mot. Dismiss
Case No: 19-cv-21871-RS

Mr. Bryan Goodwin
Mr. Eric Rayman
September 26, 2016
Page 4

**Weil, Gotshal & Manges LLP**

I await your early response. Mr. Lauder reserves all rights and remedies in the interim.

Very truly yours,

*R. Bruce R[ich]*

R. Bruce Rich

cc: Leonard A. Lauder
    Jeffrey J. Weinberg, Esq.